UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY FIOZZO,

                            Plaintiff,

                       V.

JO ANNE B. BARNHART,
Commissioner of Social Security,[1]

                         Defendant.

_____

**REPORT AND
RECOMMENDATION**

05-CV-561
(LEK/VEB)

## I. INTRODUCTION

In September of 2003, Plaintiff Anthony Fiozzo applied for Supplemental Security

Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social Security

Act.  Plaintiff alleges that he has been unable to work since May 10, 2003, due to physical

and mental impairments.   The Commissioner of Social Security denied Plaintiff's

applications.

Plaintiff, by and through his attorneys, Legal Services of Central New York, Inc., filed

this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C.

§§ 405 (g) and 1383 (c)(3).

On December 23, 2010, the Honorable Norman A. Mordue, Chief United States

District Judge, referred this case to the undersigned for a Report and Recommendation

---

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007.
The Clerk of the Court is hereby directed to substitute Commissioner Astrue in place of his predecessor,
Jo Anne B. Barnhart, as the defendant in this action pursuant to Rule 25 (d)(1) of the Federal Rules of
Civil Procedure.

pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 23).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for DIB and SSI benefits on September 4, 2003, alleging disability beginning on September 1, 2002. (T at 54-56, 75).[2]  The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on March 12, 2004, before ALJ Steven A. DeMonbreum.  (T at 283). Plaintiff appeared, along with his counsel, Cindy Domingue-Hendrickson, Esq., and testified. (T at 284-315).   Jean Hambrick, a vocational expert, was also present and testified. (T at 315-349).

On July 1, 2004, ALJ DeMonbreaum issued a decision denying Plaintiff's applications.  (T at 22-34).  The ALJ's decision became the Commissioner's final decision on March 11, 2005, when the Appeals Council denied Plaintiff's request for review. (T at 5-8).

Plaintiff timely commenced this action by filing a Complaint on May 6, 2005. (Docket No. 1).  The Commissioner interposed an Answer on September 16, 2005. (Docket No. 10). Plaintiff filed a Brief in support of the action on December 18, 2005. (Docket No. 16).  The Commissioner filed a Brief in opposition on February 16, 2006. (Docket No. 20).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 11).

accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and that judgment be entered in favor of the Commissioner.

### III. DISCUSSION

#### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); <u>see</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir.1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford</u>

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

**1.     Commissioner's Decision**

Plaintiff previously applied for disability benefits under the Social Security Act, alleging disability for the closed period between August 17, 1998, and June 28, 2002. (T at 22).  That application was granted in a decision issued on May 10, 2003. (T at 22). Plaintiff thereafter filed the application at issue in this case, alleging disability beginning on September 1, 2002.  In his decision denying this second application, the ALJ indicated that, at the administrative hearing, Plaintiff amended the alleged onset of disability for his second disability application to May 10, 2003, the day following the issuance of the earlier decision

---

the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

awarding benefits. (T at 23).[4]

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of May 10, 2003. (T at 29). The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: schizoaffective disorder and anxiety. (T at 29).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 29).  The ALJ determined that Plaintiff had the residual functional capacity to perform work at all levels of exertion and retained the ability to understand and follow directions, sustain a reasonable pace, relate and respond in a socially appropriate manner, make decisions, and adapt to changes in routine. (T at 31).

The ALJ noted that the vocational expert testified that if Plaintiff could perform his past relevant work as a bagger and stocker if his RFC was as determined by the ALJ. (T at 31).  In addition, considering Plaintiff's age (thirty), education (high school, plus some college course), work experience, and residual functional capacity, the ALJ found that there were others jobs that existed in significant numbers in the national economy that Plaintiff can perform. (T at 32).

Accordingly, the ALJ determined that Plaintiff had not been under a disability and

---

[4]The ALJ indicates that this amendment took place at the hearing.  However, it may have been accomplished off the record as this Court was unable to locate a specific reference to this fact in the transcript.  In any event, Plaintiff does not dispute this aspect of the ALJ's decision or make any arguments that suggest the difference between the original alleged onset date and the amended date is material.  Assuming the amendment occurred as stated by the ALJ, there does not appear to be any claim for disability benefits for the period between June 29, 2002, and May 9, 2003.

was not entitled to benefits from June 28, 2002, to July 1, 2004 (the date of the ALJ's decision).[5] (T at 34).  As noted above, the ALJ's decision became the Commissioner's final decision on March 11, 2005, when the Appeals Council denied Plaintiff's request for review. (T at 5-8).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers three (3) principal arguments in support of his position.  First, he contends that he was deprived of his right to due process at the administrative hearing.  Second, Plaintiff argues that the RFC determination was flawed.  Third, Plaintiff challenges the ALJ's conclusion that Plaintiff could perform work that existed in significant numbers in the national economy.  This Court will address each argument in turn.

### a.    Due Process

It is well-settled in this Circuit that "[s]ocial security claimants are entitled to 'a reasonable opportunity for a fair hearing' . . . ." Gullo v. Califano, 609 F.2d 649, 650 (2d Cir. 1979).  Due process demands that a disability benefits claimant be given an opportunity "to cross examine the author of an adverse report and to present rebuttal evidence." Townley v. Heckler, 748 F.2d 109, 114 (2d Cir. 1984); see also Cohen v. Chater, No. 95-CV-4461, 1997 WL 327412, at *4-5 (E.D.N.Y. June 9, 1997).

In this case, although Plaintiff was given the opportunity to cross-examine the

---

[5]The ALJ's conclusion that Plaintiff was not disabled from June 28, 2002, through May 10, 2003 (the amended alleged onset date), appears to have been unnecessary.  As noted above, there appears to be no claim for disability with respect to that period.  In any event, while there is a lack of perfect clarity with regard to certain of the dates at issue, no argument has been made that any discrepancies in this regard are material to the determination of this matter.

vocational expert, he argues that the ALJ unreasonably interfered with the cross-examination, thereby depriving Plaintiff of a meaningful cross-examination.  The Appeals Council considered this argument and made the following determination:

> We audited the hearing tape and found that the Administrative Law Judge handled questioning of the vocational expert properly.    At the times he interrupted testimony, he was doing so in an attempt to clarify the representative's hypothetical residual functional capacities based on specific evidence in the record.  In addition, any remarks he made regarding specific impairments appear to have been taken out of context.

> The Administrative Law Judge conducted a fair and complete hearing which allowed the claimant and his representative to present all relevant evidence regarding the severity of his condition.

(T at 6).

This Court's review of the transcript strongly indicates that the ALJ demonstrated extreme (and unwarranted) impatience with counsel's questions and breached the proper bounds of judicial comportment.  The ALJ interrupted counsel's cross-examination after she had asked only two questions and before the vocational expert had provided even a single substantive answer. (T at 326).  The transcript of counsel's cross-examination covers approximately twenty-two (22) pages. (T at 326-48).  The ALJ interrupted, interjected his own comments, or re-phrased counsel's questions to the vocational expert approximately fifty-nine (59) times.  While the ALJ may have been motivated by a desire to bring clarity to the proceedings and/or to expedite the hearing, this level of interference was unwarranted and unduly interfered with Plaintiff's right to fully plumb the depths of the expert's assumptions and opinions.  If the ALJ had become more involved in the cross-examination after allowing counsel to more fully develop her cross-examination

phraseology and strategy, one might credit this to a desire to avoid repetitive questions or to clarify confusing inquires.  However, the ALJ's interjections and interruptions were immediate and continued throughout the cross-examination.  Moreover, after reviewing the transcript of the proceedings, it offers no excuse to the ALJ that counsel's questions were inept – they were not.

With that said, while Plaintiff has established a breach of civility and professionalism by the ALJ, Plaintiff was not denied due process.  Although his attorney's cross-examination of the record was undeniably interfered with, Plaintiff has not established that any probative evidence or argument was omitted from the record because of this interference.  The transcript makes clear that Plaintiff's counsel sought to establish three (3) primary points through her cross-examination of the vocational expert.  First, that a hypothetical claimant who experienced episodes of deterioration similar in frequency and severity to the episodes suffered by the Plaintiff would not be able to perform work that exists in significant numbers in the national economy. (T at 328-31, 334-35).  Second, that a hypothetical claimant with the full spectrum of limitations assessed with respect to the Plaintiff would not be able to perform work that exists in significant numbers in the national economy, even if each limitation is considered only moderate when considered in isolation. (T at 337).  Third, that a hypothetical claimant with a marked impairment with regard to making simple work-related decisions would be precluded from performing some or all of the jobs identified by the vocational expert. (T at 338-44).

As outlined above, counsel's efforts to make these points and obtain answers from the vocational expert were improperly frustrated by the ALJ's unwarranted impatience and rudeness.   However, fundamentally, counsel was able to make her case and elicit

testimony from the vocational expert that was reasonably responsive to her questions.  The vocational expert testified that a six-day absence during a 12-month period would not necessarily cause a hypothetical claimant to lose his or her job, depending on the employer's sick time policy and the length of the employee's tenure. (T at 328-29).  She further stated that a hypothetical claimant with moderate limitations in multiple areas of functioning would nevertheless be capable of performing unskilled work. (T at 338).  Lastly, the vocational expert opined that a marked limitation with respect to simple decision-making would not necessarily preclude simple, unskilled work. (T at 338).

The review of this matter by the Appeals Council and this Court was and is informed by the points raised and answers obtained by Plaintiff's counsel during cross-examination.  As such, this Court finds that the ALJ's conduct, while improper and unwarranted, did not rise to the dramatic level of a due process violation.  Plaintiff was able to make his case and was not deprived of any fundamental right.  Accordingly, this Court finds that Plaintiff is not entitled to relief on this basis.

### b.    RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making an RFC determination, the ALJ considers a claimant's physical

abilities, mental abilities, and symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ concluded that Plaintiff's schizoaffective disorder and anxiety were severe impairments, but that Plaintiff retained the RFC to understand and follow directions, sustain a reasonable pace, relate and respond in a socially appropriate manner, make decisions, and adapt to changes in routine. (T at 33).

Plaintiff challenges this finding, pointing to a report provided by Dr. Kotwal, a treating psychiatrist, in April of 2004.  Dr. Kotwal opined that Plaintiff was moderately limited with respect to understanding, remembering, and carrying out short, simple instructions; markedly limited in terms of carrying out detailed instructions and making judgments on simple, work-related decisions. (T at 256).  In addition, Dr. Kotwal assessed moderate limitation with regard to interacting appropriately with the public, supervisors, and co-workers; responding appropriately to work pressure in a usual work setting; and responding appropriately to changes in a routine work setting. (T at 257).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362

11

F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[6]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

Here, the ALJ discounted Dr. Kotwal's assessment on the grounds that it was (a) based on a single examination that occurred when Plaintiff was in an agitated state and (b) inconsistent with the other evidence of record.  (T at 31).

This Court finds that the ALJ's decision in this regard was consistent with applicable law and supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v, 402 U.S. at 401.

A treatment note from May 15, 2003, shortly after the alleged onset date, described Plaintiff's affect as "congruent" and indicated "no formal thought disorder." (T at 150)(emphasis original).  Plaintiff reported hearing voices intermittently, but denied suicidal

---

[6]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

thoughts or depression. (T at 150-A).  A treatment note from June 2003 describes Plaintiff as essentially free from any psychiatric symptoms. (T at 151).

From July 23 to July 29, 2003, Plaintiff was admitted to St. Elizabeth Medical Center for an alleged panic attack.  Upon discharge, Dr. Bolivar Pascual indicated the following diagnosis: "Rule out chronic paranoid schizophrenia.  Rule out malingering." (T at 226).  He gave Plaintiff a Global Assessment Functioning ("GAF") score of 70. (T at 226).  A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR, 34 (4th ed.2000) (emphasis in original).  Dr. Pascual described Plaintiff as having good insight, judgment, and impulse control. (T at 226).

A follow-up treatment note indicated that Plaintiff's daily activities were unaffected by his symptoms. (T at 149).  Upon visiting Plaintiff's home in August of 2003, his therapist found Plaintiff playing the piano, Plaintiff was noted to be "pleasant [and] conversational at first[,] but when questioned about any symptoms [became] vague about any details." (T at 148).  A note from September of 2003 likewise found Plaintiff "evasive" when asked about symptoms. (T at 144).

On September 29, 2003, Dr. Buseema, a treating provider, declined to provide a medical opinion regarding Plaintiff's ability to perform work-related activities. (T at 140).  Although he did indicated some limitations due to Plaintiff being "uncooperative," Dr. Buseema stated that there was no evidence of formal thought disorder or overt psychosis and opined that Plaintiff was "mainly oppositional and defiant." (T at 135).  Dr. Buseema

13

assessed Plaintiff's history as being "characterized by vague and evasive reports of ongoing auditory hallucinations which do not correspond to objective assessment." (T at 136).

Dr. Buseema further concluded that Plaintiff's symptoms were suggestive of an organic or neurologic disease process or "malingering." (T at 137).  A cranial CT scan was thereafter performed upon Dr. Buseema's recommendation.  The results of the scan were negative. (T at 176).  Dr. Buseema noted that Plaintiff's activities of daily living included watching television, playing video games, and playing the piano. (T at 138).

With regard to Plaintiff's ability to function in a work setting, Dr. Buseema opined as follows: "unable to assess- even when totally asymptomatic, client shows no motivation towards work-like activities, despite extensive encouragement and no socialization deficits." (T at 138).  Dr. Buseema noted that Plaintiff had been "focusing much of his efforts on obtaining ongoing disability payments for the last 18 months." (T at 138).

Plaintiff testified that he lives with his mother and helps with grocery shopping. (T at 302).  He plays the keyboard, watches some television, and listens to music. (T at 303).  Plaintiff assists his mother with household chores. (T at 304).  Although he has a driver's license, Plaintiff primarily uses public transportation. (T at 311).

Additional support for the ALJ's assessment is found in the opinion offered by non-examining State Agency review psychiatrist Michelle Marks.  Specifically, Dr. Marks reviewed the record and opined that Plaintiff had a moderate degree of limitation in terms of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (T at 218).

Dr. Marks found Plaintiff not significantly limited in terms of remembering locations

and work-like procedures or with respect to his ability to understand and remember very short and simple instructions. (T at 222). She assessed Plaintiff as moderately limited with regard to understanding and remembering detailed instructions. Dr. Marks also concluded that Plaintiff had either moderate or no limitations with regard to maintaining sustained concentration and persistence, social interaction, and adaption. (T at 222-23).

In sum, Dr. Marks opined that Plaintiff retained "the ability to understand and follow directions, sustain a reasonable pace, relate and respond in a socially appropriate manner, make decisions, and adapt to changes in routine." (T at 224).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are supported by the weight of the evidence. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

In light of the foregoing, this Court finds no reversible error in the ALJ's consideration of Dr. Kotwal's assessment. As outlined above, the ALJ's RFC determination is supported

15

by substantial evidence and this Court finds no basis upon which to disturb that determination.  Although there is clearly some evidence of impairments attributable to an apparent mental illness, the ALJ's conclusion that Plaintiff nevertheless retained the ability to understand and follow directions, sustain a reasonable pace, relate and respond in a socially appropriate manner, make decisions, and adapt to changes in routine is supported by substantial evidence.

### c.    Ability to Perform Other Work

The ALJ determined that even if Plaintiff was unable to perform his past relevant work as a bagger or stocker, he retained the RFC to perform other jobs that exist in significant numbers in the national economy. (T at 33).  The ALJ specifically referenced jobs as a cleaner, vehicle cleaner, and laundry worker. (T at 33).  The ALJ's assessment in this regard was based upon the vocational expert's testimony. (T at 322).

Plaintiff takes issue with the ALJ's conclusion at this step of the sequential evaluation process, arguing that the ALJ should have limited Plaintiff's jobs to those with a "reasoning level" of 1, as established under the Dictionary of Occupational Titles ("DOT"). According to Plaintiff, the jobs identified by the vocational expert all require a reasoning level of two, which is beyond his capabilities.  Thus, Plaintiff asserts that the ALJ erred by relying on this aspect of the vocational expert's testimony.  This Court finds Plaintiff's argument unavailing for the following reasons.

First, the record does not establish that Plaintiff's reasoning level is less than two under the DOT definition.  This is Plaintiff's characterization of how the record evidence applies to the DOT definitions.  The DOT defines reasoning level two as having the ability to "[a]pply common sense understanding to carry out detailed but uninvolved written or oral

16

instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, U.S. Department of Labor, Office of Administrative Law Judges, App. C (4th ed.1991).  The ALJ concluded that Plaintiff retained the RFC to understand and follow directions, sustain a reasonable pace, relate and respond in a socially appropriate manner, make decisions, and adapt to changes in routine. (T at 33).  This RFC assessment, which was supported by substantial evidence as outlined above, is not necessarily inconsistent with an ability to perform a job with a reasoning level of 2.

Second, even if the DOT assigns a reasoning level of 2 to a particular job or jobs "in the abstract," this does not mean that Plaintiff necessarily cannot perform such work. Zokaitis v. Astrue, 10-CV-30, 2010 WL 5140576, at *12 (D.Vt. Oct. 28, 2010) ("This Court and other jurisdictions have concluded that 'the definitional requirements' for the jobs listed in the DOT are merely advisory in nature and serve only as a reference for the ALJ.")(collecting cases). "Working at reasoning level 2 does not contradict a mandate that work be simple, routine and repetitive." Edwards v. Astrue, 07-CV-898, 2010 WL 3701776, at *15 (N.D.N.Y. Sep. 16, 2010).

Accordingly, this Court finds no error in the ALJ's decision to credit the testimony of the vocational expert with respect to this aspect of the sequential evaluation process.

### IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence

17

and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the non-examining State Agency psychiatrist, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   January 19, 2011
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the**

18

Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.
January 19, 2011

Victor E. Bianchini
United States Magistrate Judge

19